Good morning. May it please the court, my name is Steve Fester. I'm here today on behalf of the appellants who I'll collectively refer to as the teachers. There's two points I'd like to make today. Number one, this action is ripe for a decision on the merits. Number two, there is an unconstitutional taking of interest here. With regard to the first point that this action is ripe for a decision on the merits, the sole basis the director now is ripe is that under Williamson County, the teachers are barred from bringing their federal taking claim in federal court and they must file their claim in state court to challenge a rule that was enacted three weeks ago, 20 years after the taking. Williams County does not stand for this proposition. There is not one single case that stands for this proposition. Justice Ginsburg As Williamson County point here, that's directed at regulatory takings and I understood your claim to be a per se taking under our decision in Schneider. Steve Foster That's correct, Your Honor, that Williamson County is inapplicable to when there's a taking of money. When there's a taking of money, the proper remedy is to file a federal taking claim in court, seek injunctive relief for the return of that money. Justice Ginsburg So your theory is that the state, DRS, just swept up your client's interests that belong to them under federal law? Steve Foster That is correct, Your Honor. The teachers made contributions that were required into retirement accounts that under state law are their property. It's undisputed that the interest rate on that was 5.5 percent annual interest compounded quarterly. An annual interest rate, by definition, is based on 365 days. And what happened is when the teachers removed their money, they did not receive all of the interest that had accrued from the days of deposit to the days of withdrawal because at that time, the director had a secret accounting practice. And under that secret accounting practice, there were entire quarters where the teachers did not receive interest. And some of these quarters, their money remained in the account the entire quarter. And this is undisputed in the record. Justice Ginsburg So what happened, so I understand that there was accounting, there's a difference between accounting and what was actually there. So there was a commingled account? Is that correct? Steve Foster What happens is the teacher's money is deposited, it goes into a commingled trust fund. And so that trust fund earns, it earns actually about 8 percent interest. Justice Kagan As an accounting matter, then each teacher has, is accounted for with a different account? Steve Foster They have an individual account. It comes monthly. They have a statement that comes, I think, monthly or quarterly that talks about the interest. But the amounts, since they weren't receiving it and there was no statements, they didn't know what was happening. It wasn't until later, until someone in the public employees retirement system, Jeff Probst, who started the first action, he worked in the, I believe the taxation department. And he said, what's happening here? You know, this, this is not right. Justice Kagan So what happened to the money? So when, when the teachers transferred over to plan three, and, and so the, they weren't given the quarter, the, the press of the current quarter, any, any interest for that current quarter under TRS's accounting practices. What happened to that interest that was accrued on their money? Steve Foster It remains in the TRS plan two, three plan. The director has said she has allocated that to pay the pensions of other people. Justice Kagan Okay, so it's used to pay defined benefits for other, other members. Steve Foster Other, other people. The teachers, the teachers defined benefits since they transferred. By statute, it must be the employer only, because they, they took their money out. So they, there's no money left over to pay their defined benefits. They moved all their money into a defined contribution plan. And that's why the amount matters, because it formed the basis for their retirement accounts going forward. Justice Kagan So, so we have a state opinion, state court opinion, and we have a regulation which says the teachers are not entitled to the interest that accrued in that missing quarter, in that present quarter when, when it was transferred. What do we do about that? Steve Foster Well, this is exactly what happened in Schneider and I think Webbs and Phillips. There was a statute or a regulation that said, well, this case is even stronger than those cases. Let me, let me back up. In Schneider, there was a state statute that expressly disavowed the inmate's right to the accrued interest on their principal. And this court said, you cannot disavow a property right protected by the Constitution. And here, the statute that DRS relies on, 4150.033, gives the director discretion of when to credit interest. So the, the director has discretion to do it She could fix the account, but she has determined by the rule enacted three weeks ago that she's not going to do that. She's not going to fix the account. So that's why we've asked for an injunction requiring an accounting and to correct the account. And what we're asking is just to move the money from the wrong account into the right account. And so this falls right into Taylor v. Wesley and other cases where the court has said that's proper injunctive relief. So I think we've discussed that this is a per se taking, not, not a regulatory taking. And those cases aren't on point. And so, Webbs, Phillips, Schneider, they all stand for the principle that, that interest follows principle. And so here, the interest was accruing day to day, and the director has just decided that in her discretion, she's not going to credit it for large amounts of time. The court rejected a similar accounting gimmick in Trustees v. Riley. That was under the federal APA, but rather than a quarter-end method, they had a month-end method. And this court said that's inaccurate. It's subject to manipulation. It was the federal APA, but the same thing's happening here. There's just this unconstitutional taking of interest. And the district court's error is, underlying the error, all of this is analyzing this as a regulatory taking. That's the error in the order of dismissal. That's the error in the classification order, saying that the teachers were seeking damages. Teachers are not seeking damages. The director agreed to classification, agreed to injunctive relief. There's more than 20,000 teachers who are affected by this. They all have the same claim. They all want the money. The taking occurred 20 years ago. They've been fighting this for 10 years in state court, two years before that in administrative proceedings. This case is ripe for a decision on the merits. And I'd like to highlight that the department, the director, agrees that if you reject the They say that in their response and in the supplemental brief. And we totally agree. It's been way too long for this case to be continuing. And if the teachers are being denied their money in their retirement, they should get that money now. So I think I'll reserve the rest of my time, if there's anything on, for rebuttal. That's fine. Thank you. For the appellee. Good morning. May it please the court, I'm Jeff Fryman. I represent Tracy Guren, who's the current director of the Department of Retirement Systems in the state of Washington. This court should affirm the district court because there is no constitutionally protected property right to daily interest. There's no case that says there's a constitutionally protected property right to daily interest. Is the controversy ripe now? In our eyes, Your Honor, it is not ripe. We do agree that there has been a final decision now made by the agency in the manner of the regulation that was recently enacted. But there is a second component to ripeness considerations, and that is whether there has been an effort to exhaust the opportunity to obtain just compensation if there is a taking. First, you have to show you had a property right. Second, that it was taken. And third, that just compensation was denied. Is it your position that Williamson County applies in this case? Yes, it is. Why? Williamson County applies in all cases except for facial challenges under the law. This is an as-applied challenge. There is no law saying that Williamson County doesn't apply for a per se taking versus a regulatory taking. It applies to either. In the Guggenheim case, this court said that if there is a facial challenge to a government regulation, then the prudential concerns stated in Williamson County may be waived. And that makes sense because then you are just challenging on its face that this law is a violation of the Constitution. So given the regulations which say that the state is entitled to keep the interest that accrued on the teacher's accounts, would it be futile to send it back to determine whether the state thinks about whether they are entitled to the interest? No, it would not, Your Honor. Why is that? Because under the State Administrative Procedure Act, if a party challenges an active rule, they can challenge it on the grounds that, for instance, it was arbitrary and capricious, much like they succeeded in their original challenge in state court. So this is the result of that ruling, right, that the district court said they have to do this, and then the rule came out. So you are saying there should be another round of challenges to the regulation under the state APA? Yes, because the reason why the court found that it was arbitrary and capricious the first time was because the court determined there wasn't due consideration indicated in the record for why the agency arrived at that particular methodology for calculating interest. Can you give me your version of what happened to these teacher accounts back 20 years ago? Certainly. And I think there is a fundamental disagreement among the parties as to how the state pension operates that underlies their argument and our argument. And that is that when an employee and their employer make monthly contributions to an individual's pension account. So does it go into a commingled investment fund? It does. Okay, and then there is an accounting function that attributes to each teacher their own account. Is that how it works? Yes, there are two separate things. The accounting function for each teacher's account means nothing in the end if the teacher or other employee retires. Because then, whatever is in their account doesn't matter. The retirement benefit... So it isn't really their account, so it's not measuring their contributions, the mandatory contributions? It is their account in the event that the employee withdraws. As happened in this case. Okay, so you have a commingled fund and then as an accounting measure it attributes to each teacher a specific account. Right. And then the commingled fund accrues interest? No, the commingled fund... It's not an interest bearing account? No. Okay, no interest at all because... No, it's an investment return account. It goes into a pool where the state pension council invests both the employer and the employee contributions into that fund. And that fund then gets returned. Some months it gets no return. It is an interest bearing? Well, I mean, they could invest in a money market account, for example, where there might be interest, but I think the bulk of it is invested in equity stocks. And some months there's a return, some months there isn't. And that's just the way the market operates. Is the reference to interest in accruing on a certain basis is erroneous because it's not actually an interest bearing fund? That was very important in Schneider as to whether the accounts were interest bearing or not. What the state has said that we're going to put all this stuff together and we're going to generate enough that it will be able to adequately fund all retirees down the road when they retire. However, if an employee terminates public service or makes a transfer as occurred in this case, then we will give them some time value of their money. They won't get the employer contributions. They will get their employee contributions and because of the investment there, in this day and age, a relatively generous 5.5% interest will be accredited to that amount that is essentially taken. It's not interest? I mean, because the Schneider makes a big point of interest and the series of Supreme Court cases say interest follows principle. So if interest is being accrued, then it belongs to the teachers, not to the state. So I'm very concerned about exactly what's happening and what's really happening, what's an accounting feature. So can you just walk me through maybe with a little bit more detail? Because certainly the documents say there is interest that accrues on these accounts and it's compounded and it's on an annual basis and all that. Yeah, and that is true. If an employee withdraws their funds, then interest will be credited to their account. So who is giving the interest? The interest is coming from the State Treasury. So the State Treasury says interest accrues on these accounts? The State Legislature said that, yes. That interest accrues on the accounts, okay. Yeah, and it's at 5.5%. The distinction here, though, that I think is really important and is amply stated in the Phillips v. Washington Legal Foundation case at 524 U.S. at 168, page 168. The court explained, quote, the government has great latitude in regulating the circumstances under which interest may be earned, end quote. And then it goes on to say only interest that actually does, and that was emphasized in the original, actually does accrue, attaches as a property right incident to ownership of the underlying principle. Here what they're saying is that there is a property right to daily interest. And that's the fundamental disagreement in this case. What we're saying is no. You have a property right to interest following principle, but that property right is only to what interest is actually earned. Here, there is no constitutional right to a certain rate of interest, 1%, 5%, 10%, nor is there a constitutional... So you're saying earned happens when the state decides to credit an account. I read that in your briefs and I couldn't quite understand that. Because crediting an account is an accounting function. It's making the numbers go up in the account. But earning is the time value of money. It happens on a time basis. So what's the basis for saying the interest isn't earned until the state decides to credit it to an account? I had trouble following that. Because that is just one aspect of the latitude the government has in determining whether and to what extent interest is earned. By saying that, well, we're going to say you get this rate, 5.5, there's no constitutional right to that particular rate. It's just a governmental decision. Schneider said, in Schneider, the state statute says interest is not earned on these accounts. We're not going to credit it. Whatever money we get from our investments or whatever, you're not going to get any interest. In Schneider, we rejected that, said the state can't make that decision. How is what you're doing different? What Schneider said is there was interest actually earned and it was credited to a different account, the Inmate Welfare Fund in general, rather than to the individual inmate's account. So opposing counsel says the interest that was, that accrued on this money just went into the general pool and was used to pay other teachers, other members of the pension. Is that wrong? That is wrong. Because this money is not sitting in an individual account like it was in Schneider, accruing interest. And then that interest is then transferred to the Inmate Welfare Fund for the general use of people. Here, at the outset, the contributions, both employer and employee, are going into this funding, investment funding account generally. When somebody takes their employee contributions out, that is when this accounting occurs. So can the state say you accrue interest every other quarter? Yes. That's your position? Yes, because there's no constitutional right. There's no case that establishes, and in fact the Phillips case disavows that there would be such a constitutional right to say government can choose, can't choose when they credit interest. They must choose under the Constitution to credit interest daily. That's their theory. And there is no law to support that. And in fact, that would be inaccurate. So really what this boils down to is that the plaintiffs are asserting a fiction, an invalid premise that this money in their individual accounts is sitting there, much like it sits in a bank account and collects interest. It doesn't sit in a bank account either. We all know that the bank takes all the money that's deposited and invests it. So there's no, you can't go to your bank and ask to see your money in the account. So I'm not sure I see that much of a difference there. Okay. Well, what I'm driving at, though, is that they're saying, though, that it is sitting there collecting interest that the state is taking away from them, but yet it's maintained somewhere that can easily be just transferred back to them. That's not what is happening. It's going to this pension fund, I'm sorry, this investment fund. And that is where the money ultimately comes from, is taking it out of that investment fund and putting it to the individual's account at the time of withdrawal. There are other issues in this case. I see I'm getting short on time here. So I would just point out, in addition to the jurisdictional issue on ripeness, which we've already discussed, there is the additional jurisdictional issue based on the Rucker-Feldman Doctrine, that in order for this Court to essentially reverse what the state court decided, which is that there is no right to daily interest, that would be a forbidden appeal to a Federal Court other than United States Supreme Court. So the Rucker-Feldman Doctrine controls. In the state case, the Court said, as is common protocol, we aren't going to reach the takings issue because we can decide this on non-constitutional grounds, specifically that there is no right in Washington State, anyway, for public employees contributing to the government pension fund to have daily interest. And that's under state statute. So in order for this Court to assume jurisdiction over this case and rule to the contrary, would in effect be reversing the state court decision that there is no right to daily interest. And thus, jurisdiction is lacking under the Federal Rucker-Feldman Doctrine. There's also issues related to collateral estoppel. That issue was decided in a final judgment and is now the law of the case because they didn't appeal it to the United States Supreme Court. Did the state court reach the takings clause issue? As I indicated, they did not because they were able to decide it on a non-constitutional basis, which courts do all the time, if possible. So that was not addressed by the state courts? Well, the issue... The issue before us here, the takings clause, whether there's a constitutional taking. That component was not, but the issue of whether there is a right to daily interest was addressed. And that is the underlying theory of their takings claim, that they have that property right. And the state court said, no, you do not have that property right. So therefore, you cannot assert that it was taken from you because it's something you didn't have in the first place. You didn't have a right to daily interest. Unless there's further questions, I'm out of time. Thank you. No questions here. I first want to put to bed this Williamson County argument because even under Williamson County, the director's wrong. Under Williamson County, you have to have state procedures for seeking just compensation. There's no state procedures for seeking just compensation when the government takes your money. They have cited nothing like inverse condemnation. And Williamson County in footnote 13 expressly says this second prong doesn't apply to review procedures. You don't have to go seek judicial review of the regulation, even if this was considered a regulatory taking. So that argument's wrong. So we go on to the merits. On the merits, the director now says it's not an interest bearing account, but the record is that it is an interest bearing account. And the undisputed record, and this is at ER 23, ER 37, ER 39, the rate of interest on the member accounts is 5.5% annual interest compounded quarterly. Those words mean something. Annual interest compounded quarterly. When you're having interest, an annual interest rate, it just means interest day to day. If the interest is going to be there on an annual rate, you have to pay for every day. It's just like a bank. And the notion of Phillips and it's not earned, that's a fiction. That's this fiction that it's not credited, it's not earned. The whole definition of accrued interest is interest earned but not credited, not paid. So the accrued interest here is the interest that has accrued day to day but has not been paid. So in summary, this litigation has been going on for 20 years. The director agrees that if you reject the ripeness argument, you should reach the merits. And the merits are this is a taking, an unconstitutional taking, undisputed facts, pure issue of law. The teachers request that you end this litigation and issue a decision on the merits. Your Honor, counsel, I thought I heard the appellee's counsel argue that if we were to say it was ripe, that there's still other issues like Rooker-Feldman that would stop us from getting to the merits. I don't think Rooker-Feldman stops you from getting the merits. That is an argument that the state court determined this. The state court plainly, expressly, twice said we are not deciding anything with regard to the takings claim. So Rooker-Feldman, collateral estoppel, those are baseless arguments, Your Honor. They don't prevent the court from deciding this on the merits because I also think that the takings claim is inextricably combined with their ripeness argument because their ripeness argument is that this is a regulatory taking and not a per se taking. So I think that the merits are going to have to be decided in order to decide the ripeness argument. Anything else? Okay. Thank you. Thank you. We appreciate the arguments on both sides. And that case shall be submitted
judges: Gould, Ikuta, Tunheim